**UNITED STATES of America, Plaintiff,**

v.

**Camila CHAVEZ and Maria G. Cordova, Defendants.**

**No. 990018401CRWSOW.**

United States District Court, W.D. Missouri, Western Division.

Nov. 4, 1999.

Gregg Coonrod, U.S. Attorney's Office, Kansas city, MO, for plaintiff.

Robert Rodarte, Kansas City, MO, for defendants.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court is the Report and Recommendation of United States Magistrate regarding defendant's Motion to Suppress (Doc. # 26) and the defendant's Objections to this Report and Recommendation (Doc. # 70). Having reviewed the record in this case and the applicable legal

precedent, this Court agrees with this recommendation and sees no reason to comment further. Accordingly, it is hereby

ORDERED that defendant's Motion to Suppress Statements (Doc. # 26) is denied.

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

LARSEN, United States Magistrate Judge.

Before the court is defendant's motion to suppress evidence and statements on the grounds that (1) defendant was arrested without probable cause, (2) defendant's statement was obtained before she was advised of her *Miranda* rights, (3) defendant's statement was the result of intimidation, threats, and confusion, and (4) defendant did not consent to a search of her luggage. I find that (1) there was probable cause to arrest defendant, (2) defendant was advised of her *Miranda* rights before she was questioned, (3) there is no evidence that defendant was intimidated, threatened, or confused by any act of the police, and (4) defendant voluntarily consented to the search of her luggage. Therefore, defendant's motion should be denied.

### I. BACKGROUND

On June 23, 1999, a criminal complaint was filed charging defendant and co-defendant Maria Cordova with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On July 19, 1999, an indictment was returned charging the possession count along with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

Defendant filed a motion to suppress evidence on September 21, 1999 (document number 26). On August 24, 1999, the government filed a response in opposition to defendant's motion (document number 35). The government argues that (1) co-defendant Cordova's consent to search her bag prevented the encounter from becoming an investigatory stop, (2) the law enforcement officers had probable cause to arrest defendant, (3) defendant signed a *Miranda* waiver form which was written in Spanish, and (4) defendant voluntarily consented to a search of her luggage.

On September 7, 1999, I conducted a hearing on defendant's motion to suppress. The government appeared by Assistant United States Attorney Gregg Coonrod. The defendant was present, represented by counsel, Robert Rodarte and Gary Jenkins. Officer Robert Delameter and Detective George Barrios, both of the Kansas City, Missouri, Police Department, testified. In addition, the following exhibits were admitted:

P. Ex. 1 *Miranda* waiver form written in Spanish

D. Ex. 1 Chart drawn by Officer Delameter

Court's Ex. 1 Statement given by defendant at police headquarters translated by George Barrios.

### II. FINDINGS OF FACT

On the basis of the evidence presented at the suppression hearing, I submit the following proposed findings of fact:

1. At 6:00 a.m. on June 23, 1999, Officer Robert Delameter and Detective George Barrios arrived at the Kansas City bus station to watch for people who might be bringing drugs into the city via bus (Tr. at 8).[1] Sometime around 7:25 a.m., the bus which originates in Texas and travels through Wichita, Kansas, arrived at the Kansas City, Missouri, station (Tr. at 9, 18, 38).

2. Officer Delameter saw two Hispanic females deboard the bus (Tr. at 9). One of the women, co-defendant Maria Cordova, caught Officer Delameter's attention because her eyes were scanning the crowd, she had a very frightened look on her face, and she immediately headed for the exit doors at the bus station (Tr. at 9–10, 22). Officer Delameter watched Cordova enter

---

1. "Tr." refers to the transcript of the suppression hearing held on September 7, 1999.

the lobby through the main door and then exit onto the street with defendant close behind (Tr. at 10, 22). The two women immediately contacted a cab driver waiting in front of the station, and the driver walked to the rear of the car with them and opened the trunk (Tr. at 10, 11, 22).

3. Officer Delameter, who, along with Detective Barrios, had been following about 10 to 15 feet behind the women, approached Cordova, identified himself, and asked if he could speak with her for a few moments (Tr. at 11, 12, 23, 24, 33). Ms. Cordova nodded her head and said, "yes" in English (Tr. at 11). Defendant was standing next to Cordova waiting to put her luggage in the trunk and Detective Barrios was standing about eight feet behind the others (Tr. at 11, 34, 45).

4. Officer Delameter asked if he could see Ms. Cordova's bus ticket (Tr. at 12, 24). She produced the ticket which indicated that her bus trip had originated in El Paso, Texas, and she was destined for Kansas City, Kansas (Tr. at 12, 24). It was a one-way ticket paid for with cash (Tr. at 12). Ms. Cordova's hands were trembling when she handed her ticket to Officer Delameter (Tr. at 29).

5. Officer Delameter then asked to see some identification, and Ms. Cordova produced an identification card or a driver's license from California (Tr. at 13, 24). He asked Ms. Cordova if she had been visiting relatives in Texas since her bus ticket indicated she had not come from California (Tr. at 13–14) Ms. Cordova did not respond (Tr. at 14).

6. Officer Delameter was suspicious because Ms. Cordova appeared nervous and frightened; she was scanning the crowd as if she were looking to see if someone "was there that she didn't want to see;" she had two pieces of luggage, one of which was very large, which she carried on the bus rather than checking; she exited the bus before she had reached her destination of Kansas City, Kansas; her hand trembled when she handed her ticket to Officer Delameter; she purchased a one-way ticket which is common for people carrying drugs; the ticket was purchased with cash with is common for people carrying drugs; the trip originated in El Paso, Texas, which is a source city for drugs; the trip originated in El Paso, Texas, when Ms. Cordova's identification indicated she was from California; and Ms. Cordova did not answer when Officer Delameter asked if she had been visiting relatives in Texas thus explaining her traveling from Texas rather than from California (Tr. at 12–13, 26, 28–29).

7. Officer Delameter advised that he worked in the narcotics unit of the Kansas City, Missouri, Police Department and that he was attempting to identify luggage that may have illegal drugs inside (Tr. at 14). Officer Delameter asked Ms. Cordova for permission to look inside her luggage (Tr. at 14). Cordova said yes and pointed toward her luggage which was sitting on the ground in front of her and next to the rear of the taxi (Tr. at 14).

8. Officer Delameter kneeled down and opened a large suitcase which had only two articles of clothing inside (Tr. at 14). He rezipped the first suitcase and then unzipped Cordova's gym-style bag (Tr. at 14–15). There was a cloth lying on the top (Tr. at 15). Officer Delameter removed the cloth and saw several bundles of narcotics in the bag (Tr. at 15). Officer Delameter conducted a field test which indicated that the bundles contained powder cocaine (Tr. at 15).

9. Officer Delameter stood up and told Ms. Cordova she was under arrest (Tr. at 15, 34). He handcuffed Ms. Cordova and instructed his partner, Detective Barrios, to place defendant under arrest. Detective Barrios, speaking in Spanish, asked defendant to put her hands behind her back (Tr. at 15–16, 34–35). She complied and he handcuffed defendant, then all four walked to the police department's office at the rear of the bus station (Tr. at 15–16, 35).

10. Detective Barrios, again speaking in Spanish, told defendant he was a police officer and defendant commented "yes"

(Tr. at 36). He then asked for permission to search her bags and she again said yes (Tr. at 36, 47). Detective Barrios found five cellophane-wrapped bundles which field tested positive for cocaine (Tr. at 31, 36). Defendant and Ms. Cordova were then transported to police headquarters at 1125 Locust (Tr. at 17, 36, 45). About 20 minutes passed between the time the women were arrested and the time they arrived at headquarters (Tr. at 17, 36).

11. Defendant was placed in an interview room and Detective Barrios read a Spanish *Miranda* waiver form to her because she told him she could not read (Tr. at 17, 37, 45). After Detective Barrios read the part stating "I understand these rights, and I'm willing to talk to you," he asked her if she understood (Tr. at 38). Defendant said yes and then signed the form (Tr. at 38, 46). The waiver form reflects that questioning began at 7:49 a.m. and concluded at 11:15 a.m. (Tr. at 39–40; P.Ex. 1). Defendant admitted that she was paid to transport drugs from El Paso to Kansas City and that she had done so twice previously (Court's Ex. 1). The entire conversation took place in Spanish and Detective Barrios translated defendant's statement into English before writing it down (Court's Ex. 1).

12. Detective Barrios speaks fluent Spanish (Tr. at 40). His father's parents were born in Spain and moved to the United States where his father was born (Tr. at 40). When his father was in the military, he was stationed in Spain where he met Detective Barrios' mother and the two were married (Tr. at 40). Detective Barrios has spoken Spanish his entire life (Tr. at 40).

13. Detective Barrios spoke Spanish to defendant during their entire conversation (Tr. at 40). Whenever he speaks to a suspect in Spanish, he tells the suspect to stop him if he or she does not understand (Tr. at 41). At no time did defendant have any trouble understanding Detective Barrios (Tr. at 40).

## III. PROBABLE CAUSE TO ARREST

■ I begin this section by pointing out that defendant vigorously challenges the legality of the arrest of co-defendant Maria Cordova whose illegal drugs were discovered prior to the discovery of defendant's illegal drugs, yet defendant has no standing to challenge that arrest or the subsequent search of Cordova's luggage.

■ An arrest is a seizure of the person and so must comport with fourth amendment requirements. *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). "[T]he product of a fourth amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and co-defendants have been accorded no special standing." *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Therefore, defendant's argument with respect to the legality of the arrest of Ms. Cordova is not applicable to this case.

Likewise, defendant has no standing to challenge the search of Ms. Cordova's luggage. In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the Court held that the defendant had no standing to contest a search of his companion's purse because he had no right to exclude others from using that purse. In this case, whether the officers legally searched Cordova's luggage is not relevant since defendant has no standing to make a constitutional challenge to that search.

■ Defendant argues that Detective Barrios did not have probable cause to arrest her. She states in her motion that "[t]he only articulable facts that Officer Barrios knew prior to the investigatory stop are 1) Ms. Chavez is Hispanic; 2) she arrived on a bus from a Western city; and 3) she walked close behind Ms. Cordova. He knew that her companion was in pos-

session of cocaine but this was a result of an illegal search, and even if this was not an illegal search, Officer Barrios still had not [sic] articulable facts that Ms. Chavez had any knowledge of the cocaine."

 Probable cause exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *United States v. Magness*, 69 F.3d 872, 874 (8th Cir.1995). Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene. *United States v. Horne*, 4 F.3d 579, 585 (8th Cir.1993), *cert. denied*, 510 U.S. 1138, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994).

In this case, Detective Barrios and Officer Delameter knew that defendant and Maria Cordova were traveling together: Defendant and Ms. Cordova exited the bus together, they exited the bus station together, they contacted a cab together, they walked to the rear of the cab together, and defendant stood beside Ms. Cordova waiting to put her luggage in the trunk along with Ms. Cordova's. When Officer Delameter discovered five pounds of cocaine in Ms. Cordova's luggage, he had probable cause to arrest defendant.

Defendant's theory is neither supported by legal authority[2] nor logical. For example, if the police were required to observe a certain amount of illegal conduct on the part of each participant to a crime, it is unlikely the driver of a get-away car in a bank robbery could ever be arrested since sitting in a car outside a bank is not against the law. Even if the bank robbers were to get inside the car after having robbed the bank, the police would have no probable cause to arrest him, under defendant's theory, since they could not prove that he knew about the bank robbery.[3]

I find that the arresting officers had probable cause to detain defendant after she was observed traveling with Maria Cordova who was in possession of five pounds of cocaine, certainly until their investigation was complete. Therefore, defendant's motion to suppress on this basis should be denied.

## IV. TIMING OF MIRANDA WARNINGS

Defendant argues that she was questioned while in custody and before she was

---

2. Defendant relies on *United States v. Green*, 52 F.3d 194 (8th Cir.1995), and *United States v. Pena–Saiz*, 161 F.3d 1175 (8th Cir.1998), which are easily distinguishable. In both of those cases, the court found that there was no probable cause to arrest. In *Green*, many of the factors relied on by the arresting officer were disputed by the defendant's testimony and the credibility issue was not resolved by the trial court. When the officer asked for the defendant's permission to search her bag, she said no; the defendant testified that while she was being detained awaiting the arrival of a drug dog, the officer looked in her purse without her consent but the officer testified that he saw a bag of white powder in defendant's purse from the opposite side of the alcove. None of the credibility issues had been resolved by the trial court. In *Pena–Saiz*, the officers questioned Pena–Saiz, searched her duffel bag and found a wrapped gift, took her to the interdiction office and opened the gift. Despite finding no drugs and observing no unusual bulges, the officers asked Pena–Saiz several times for consent to a pat-down search. She said no each time. The officers then said, "This is our job. This is what we do. We talk to people, we search people's bags, we pat search people. This is what we do every day." After Pena–Saiz refused for the third time, the officers told her she was under arrest. Finally, believing she had no choice, Pena–Saiz told the officers to "do what you have to do" and one of them proceeded with a pat-down search discovering cocaine hidden in Pena–Saiz' breast area. The government in that case did not even argue probable cause, rather it argued that the entire encounter was consensual. The court found that it was not. Neither of these cases is similar to the one at hand.

3. In defendant's motion, she states that "even if [the search of Cordova's luggage] was not an illegal search, Officer Barrios still had not [sic] articulable facts that Ms. Chavez had any knowledge of the cocaine."

advised of her *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that when a suspect is in custody, she must be advised of certain rights prior to interrogation.

The uncontradicted testimony at the hearing established that defendant was advised of her *Miranda* rights and waived those rights prior to questioning. Detective Barrios testified that he advised defendant of her rights by reading them from a Spanish *Miranda* waiver form. Defendant indicated she understood her rights and she signed a waiver form at 7:48 a.m. The questioning began at 7:49 a.m., or immediately after the waiver form was signed.

Defendant offered no evidence to contradict this evidence which was offered by the government. Because I find that defendant was advised of her *Miranda* rights prior to being questioned, her motion to suppress on this basis should be denied.

## V. INTIMIDATION, THREATS, AND CONFUSION

Defendant argues that she was "coerced by the police custody into giving the alleged consent to search her luggage". Defendant does not elaborate, but states in her conclusion paragraph that she "was intimidated, threatened, and confused by the unlawful confrontation by the law enforcement officers".

■ As discussed above, there was no unlawful confrontation by the law enforcement officers. There was no coercion involved in obtaining defendant's consent to search her luggage. The undisputed testimony of Detective Barrios establishes that after defendant was placed under arrest, Detective Barrios identified himself as a police officer and asked defendant for consent to search her luggage. She said yes. This conversation was conducted in Spanish. There is no evidence indicating that this testimony is untrue or that defendant was coerced into acquiescing.

Therefore, defendant's motion to suppress on this basis should be denied.

## VI. CONSENT TO SEARCH OF LUGGAGE

Defendant argues that she did not consent to a search of her luggage.

■ Even when police officers have neither probable cause nor a warrant, they may search an area if they obtain a voluntary consent from someone possessing adequate authority over the area. *United States v. Matlock,* 415 U.S. 164, 171 & n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, a voluntary consent need not amount to a waiver. *United States v. Chaidez,* 906 F.2d 377, 380 (8th Cir.1990). Consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Bustamonte,* 412 U.S. at 235, 93 S.Ct. 2041. The proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *Id.* at 226, 93 S.Ct. 2041.

■ The government bears the burden of proving a voluntary consent to search by a preponderance of the evidence. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Ramey,* 711 F.2d 104, 107 (8th Cir.1983). The question of whether the consent was voluntarily given is a question of fact for the trial court. *United States v. Cortez,* 935 F.2d 135, 142 (8th Cir.1991); *United States v. Alberts,* 721 F.2d 636 (8th Cir.1983). Consent is voluntary if it was "the product of an essentially free and unconstrained choice by its maker" rather than the product of duress or coercion, express or implied. *Bustamonte,* 412 U.S. at 225, 227, 93 S.Ct. 2041.

■ The following characteristics of a person giving consent and the environment in which consent was given are relevant when assessing the voluntariness of the consent:

1. Age, *Id.,* at 226, 93 S.Ct. 2041; *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 (1948);

2. General intelligence and education, *United States v. Watson,* 423 U.S. 411, 425, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Bustamonte,* 412 U.S. at 226, 93 S.Ct. 2041; *Payne v. Arkansas,* 356 U.S. 560, 567, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); *Fikes v. Alabama,* 352 U.S. 191, 196–97, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957);

3. Whether the person was intoxicated or under the influence of drugs when consenting, *United States v. Rambo,* 789 F.2d 1289, 1297 (8th Cir.1986);

4. Whether the person consented after being informed of his right to withhold consent or of his *Miranda* rights, *Watson,* 423 U.S. at 424–25, 96 S.Ct. 820; *Bustamonte,* 412 U.S. at 226, 93 S.Ct. 2041;

5. Whether, because the person had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system, *Watson,* 423 U.S. at 424–25, 96 S.Ct. 820; *Laing v. United States,* 891 F.2d 683, 686 (8th Cir.1989); *United States v. Carter,* 884 F.2d 368, 375 (8th Cir.1989);

6. Whether the person was detained and questioned for a long or short time, *Bustamonte,* 412 U.S. at 226, 93 S.Ct. 2041;

7. Whether the person was threatened, physically intimidated, or punished by the police, *Watson,* 423 U.S. at 424, 96 S.Ct. 820; *Bustamonte,* 412 U.S. at 226, 93 S.Ct. 2041; *Reck v. Pate,* 367 U.S. 433, 442–43, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Laing,* 891 F.2d at 686;

8. Whether the person relied upon promises or misrepresentations made by the police, *Watson,* 423 U.S. at 424, 96 S.Ct. 820; *Laing,* 891 F.2d at 686; *Carter,* 884 F.2d at 374–75;

9. Whether the person was in custody or under arrest when the consent was given, *Watson,* 423 U.S. at 424, 96 S.Ct. 820;

10. Whether the person was in a public or a secluded place, *Id.;* or

11. Whether the person objected to the search or stood by silently while the search occurred, *Chaidez,* 906 F.2d at 381.

■ After applying these factors to the facts of this case, I conclude that the defendant voluntarily consented to the search of her luggage.

Defendant is an adult of general intelligence, and there is no evidence that she was under the influence of alcohol or drugs. Although defendant was not informed of her right to withhold consent, as I note below, defendant's consent was not really relevant since the luggage could have been searched incident to arrest. She was detained for only minutes when she was asked for consent to search her luggage. There is no evidence that defendant was threatened, physically intimidated, or punished. No promises or misrepresentations were made by the police. Finally, defendant did not object when the search was being conducted.

Weighing against a finding of voluntary consent are only the following factors: Defendant has no known criminal history. She was in custody when the consent was given. And she was in a secluded place, i.e., the office space used by the police at the bus station.

Considering these factors, I find that defendant voluntarily consented to the search of her luggage.

■ In addition to the above, I find that regardless of whether defendant voluntarily consented to the search of her luggage, that search could have taken place without her consent incident to her arrest. *See New York v. Belton,* 453 U.S. 454, 460–461, n. 4, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (containers which may be searched incident to arrest include luggage).

Therefore, for all of these reasons, I find that the search of defendant's luggage was

lawful and defendant's motion to suppress on that basis should be denied.

Based on all of the above, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of receipt of a copy of this report and recommendation to file and serve specific objections, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.